UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHERI SCOTT, individually and as mother and next friend of JACQUALIN SCOTT, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CITY OF TALLADEGA, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) CV 00-BU-2526-E ) ) ) ) ) |

**ENTERED**
MAY 10 2001

## MEMORANDUM OPINION

In their amended complaint in the above-styled action (Doc. 21), Plaintiffs Cheri Scott and Jacqualin Scott, through her mother, Cheri Scott, claim that Defendants City of Talladega, Police Officer Andy Yarbrough, and Acting Chief of Police Alan Watson are liable under 42 U.S.C. § 1983 for violations of Plaintiffs' federal constitutional rights and under Alabama state tort law, based on allegations that Plaintiffs were subjected to excessive force during the course of their arrest and that after her arrest, Jacqualin Scott was deprived of a substantive due process right during her detention.[1] Now before the Court is a motion for summary judgment filed jointly by the City, Officer Yarbrough, and Chief Watson. (Doc. 22). Plaintiffs have

---

[1] Plaintiffs also allege claims against Jason Busby, a Talladega police officer; Charles Osborne, Mayor of Talladega; and Joseph Hare, former Chief of Police for Talladega. None of these Defendants are before the Court.

34

responded to Defendants' motion for summary judgment. Considering the evidence submitted and the arguments presented by the parties, the Court concludes that the motion for summary judgment (Doc. 22) is due to be GRANTED IN PART and DENIED IN PART. Plaintiffs' claims against these Defendants are due to be dismissed.

## I. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its

initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

II. **STATEMENT OF FACTS**

On Saturday, March 11, 2000, at approximately 9:00 - 9:15 p.m., the manager of the Martin Triple Theater in Talladega, Alabama, called the Talladega Police Department and requested the police to come and clear the parking lot. Officers Yarborough and Jason Busby arrived on the scene and attempted to break up a disturbance between two teen-aged girls – Plaintiff Jacqualin Scott and another girl.

When the officers arrived, a crowd had formed and a fight had broken out between the two girls, which Cheri Scott made no effort to stop. While approaching the fighting girls, Officer Yarbrough yelled, "Stop" and "Police," but the girls did not stop fighting. Officer Yarbrough grabbed Jacqualin Scott and Officer Busby grabbed the other girl. According to Plaintiffs, Officer Yarbrough swung Jacqualin Scott around and slammed her face first into a car. Jacqualin Scott had lacerations on

her face. Cheri Scott entered the fray by "physically objecting"[2] to Officer Yarbrough's treatment of her daughter. Defendants presented evidence that Cheri Scott actually jumped on Officer Yarbrough. Cheri Scott claims that Officer Yarbrough elbowed her in the face. Thereafter, a fight between Officer Yarbrough and Cheri Scott ensued.

Upon reviewing her mother's predicament, Jacqualin Scott attempted to come to her mother's aid by grabbing Officer Yarbrough around his neck. At this time, the theater manager called the police department again and told the dispatcher to send more police officers.

Officer Busby pulled Jacqualin Scott off of Officer Yarbrough. Additional Talladega police officers arrived on the scene and Cheri Scott was subdued by several of these officers. She claims that they threw her onto a hood ornament of a car. Meanwhile, Officer Busby had taken Jacqualin Scott down on the pavement -- she claims head first -- and held her there with his knee in her back. She claims she suffered a back strain and a blow to her head during this time.

Cheri Scott and Jacqualin Scott were arrested for assault and resisting arrest. Jacqualin Scott was fourteen years old at the time of her arrest. While Cheri Scott was being booked, Officer Yarbrough told her that he was the officer that she had

---

[2]The Court infers from Plaintiffs' use of the word "physically" that Cheri Scott laid hands on Officer Yarbrough. This fact is supported by other evidence in the record.

jumped on; Cheri Scott replied, "You didn't have no [sic] right grabbing my daughter like that."

Officer Yarbrough was treated for scratches and cuts to his left eye and left side of his face, knee pain, and trauma to his left throat area from which he spit up blood for two days.

Cheri Scott refused medical treatment at the scene. Three to four hours after the incident, when she was released from jail, she was seen in the emergency room at Citizen's Baptist Medical Center in Talladega. She was treated for abrasions and contusions.

Paramedics at the scene looked at Jacqualin Scott and she later refused further treatment. Shortly after her arrest, Jacqualin Scott was transferred to the Department of Youth Services Coosa Valley Detention Center, where she remained until the following Monday. She contends in her complaint that she was not allowed to see her mother. After she was released, she was seen in the emergency room of Citizen's Baptist Medical Center. She was treated for contusions. Neither Plaintiff required medical treatment after the initial emergency room visit.

The instant case is the first time that Officers Yarbrough and Busby have had an excessive force complaint filed against them. Officers Yarbrough and Busby have undergone police officer training.

### III.     DISCUSSION

#### A.  The Section 1983 Claims

Section 1983 creates a civil cause of action for any person deprived of any rights, privileges, or immunities, secured by the Constitution and laws, by another person acting under color of state law. 42 U.S.C. § 1983.[3] Thus, in order to prevail, Plaintiffs must demonstrate both (1) that Defendants deprived them of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law. See *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187-88 (11th Cir. 1999); *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). With respect to Plaintiffs' § 1983 claims, there is no doubt that Defendants acted under color of state law for purposes of a § 1983 claim.

#### 1.     The Excessive Force Claim

Plaintiffs claim that Officer Yarbrough is liable under § 1983 for using excessive force in securing their arrests. The Fourth Amendment prohibits a law enforcement officer from employing unreasonable force in the course of a lawful arrest, investigatory stop, or other "seizure" of a free citizen. See *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000)(citing *Graham v. Connor*, 490

---

[3]Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

U.S. 386, 394-95, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443(1989)).

Defendants argue that no constitutional violation occurred so as to support this claim, and they further assert that Officer Yarbrough is entitled to qualified immunity. "Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A reasonable official's awareness of the existence of an abstract right, such as a right to be free of excessive force, does not equate to knowledge that his conduct infringes the right." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). Rather, "[f]or the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester*, 208 F.3d at 926; *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)(*en banc*)(citing *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)). Thus, "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Smith*, 127 F.3d at 1419. However, "[w]hen an excessive force plaintiff shows 'that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the

lack of caselaw,' the official is not entitled to the defense of qualified immunity." *Priester*, 208 F.3d at 926 (quoting *Smith*, 127 F.3d at 1419).

Where a public official asserts the defense of qualified immunity, a court is generally required to first determine whether the evidence shows that a plaintiff's constitutional rights were violated before inquiring into whether the right implicated was clearly established at the time of the events in question. *See Hudson v. Hall*, 231 F.3d 1289, 1296 n.5 (11th Cir. 2001)(citing *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S. Ct. 1708, 1714 n. 5, 140 L. Ed. 2d 1043 (1998)). Whether the force used by a law enforcement officer is unreasonable for purposes of the Fourth Amendment is determined using a wholly objective standard that does not implicate an inquiry into the subjective motives of the officer. *See Graham*, 490 U.S. at 397, 109 S. Ct. at 1872. The analysis is performed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. at 1872. This calculus also embodies an "allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a

particular situation." *Id.* at 397, 109 S. Ct. at 1872. Thus, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id.* at 396-97, 109 S. Ct. at 1872. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

> This Circuit evaluates whether an officer's use of force is objectively reasonable by considering [a] myriad [of] factors, such as "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir.1992)(quoting *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986)). Furthermore, "[i]n making this objective assessment, a court may consider in addition to physical injury 'other relevant factors including the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Crosby v. Paulk*, 187 F.3d 1339, 1351 (11th Cir.1999)(quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997)). A court may also factor in "the severity of the crime, whether the suspect posed an immediate threat, and whether the suspect was resisting or fleeing." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir.1997)(quoting [*Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *opinion modified*, 14 F.3d 583 (11th Cir. 1994).

*Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000); *see also Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000).

The Court has reviewed the record and finds that the amount of force exerted by Defendant Officer Yarbrough against Plaintiffs was not excessive -- as a matter of law. Both Plaintiffs admit to physical contact with Officer Yarbrough. Indeed, Plaintiff's brief in opposition to Defendants' motion for summary judgment states that

Cheri Scott and Officer Yarbrough fought and that several officers were required to subdue her. Also, Plaintiffs do not dispute that Jacqualin Scott grabbed Officer Yarbrough around his neck. The ensuing fracas was not resolved until additional police officers arrived on the scene. Moreover, Plaintiffs' injuries were minimal. Viewing the record in the light most favorable to Plaintiffs, the Court finds, as a matter of law, that the force used in arresting Plaintiffs was not constitutionally excessive. Therefore, the excessive force/§1983 claim against Defendant Officer Yarbrough is due to be dismissed.[4]

Because the Court finds, as a matter of law, that no excessive force was used during the arrests of Plaintiffs, Defendants' motion for summary judgment is due to be granted and the claims against the City[5] and Chief Andy Watson[6] based on the alleged excessive force are also due to be dismissed. *See Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir.1992); *Fundiller v. City of Cooper City*,

---

[4]Even if the Court were to find that Plaintiff's had been subjected to constitutionally excessive force during their arrest, Officer Yarbrough is clearly entitled to qualified immunity.

[5]The Court finds that, even if the force used could be found to have been excessive, the City would be due to be dismissed on the grounds that Plaintiffs have failed to show deliberate indifference. *Gold v. City of Miami*, 151 F.3d at 1350; *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

[6]The claim against Chief Watson is based on Plaintiffs' allegations that "The Chief of Police, Andy Watson, has a custom and policy of allowing officers who were not trained or improperly trained to use excessive force." Doc. 21, ¶ 17. However, the evidence is undisputed that Chief Watson was not the Chief of Police on the day Plaintiffs were arrested. Doc. 24, Exh. 4.

777 F.2d 1436, 1442 (11th Cir.1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 105 S.Ct. 2427, 2434-35, 85 L. Ed. .2d 791 (1985)).

### 2. Substantive Due Process

Plaintiffs' amended complaint contains a § 1983 claim, alleging a violation of Jacqualin Scott's right to substantive due process. The amended complaint states:

> 22. On or about March [11], 2000, members of the City of Talladega Police Department, acting under color of state law, made an arrest of a minor, Plaintiff Jacqualin Scott.
>
> 23. Subsequent to her arrest, the minor Plaintiff was unreasonably detained for the entire weekend and was not allowed to see her mother, Plaintiff Cheri Scott.
>
> 24. The Defendants were aware or should have been aware that this detention of the minor Plaintiff and their refusal to allow her to see her mother violated the plaintiff's right to due process under the U.S. Constitution.

Doc. 21, ¶¶ 22-24.

The evidence is undisputed that Plaintiff Jacqualin Scott was detained at the Department of Youth Services's Coosa Valley Detention Center. Plaintiffs have not alleged or offered any proof that any of the Defendants before the Court were responsible for the length and conditions of Jacqualin Scott's detention after her arrest. Therefore, summary judgment is due to be granted as to all such Defendants on Plaintiffs' § 1983 substantive due process claim and such claim is due to be dismissed.

### B. STATE LAW CLAIMS

Based on the Court's holding as to Plaintiffs' federal claims, Plaintiffs' state law claims are due to be dismissed without prejudice to the right of Plaintiffs to pursue such claims in state court. *See* 28 U.S.C. § 1367(c); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000)("At this time, the case retains no independent basis for federal jurisdiction and the only claims that remain deal with complex questions of discretionary function immunity in the state of Alabama. A proper resolution of the two state law causes of action will require a careful analysis of Alabama law -- something the courts of Alabama are in the best position and, for reasons of federalism, should undertake in this sensitive area."); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of state claims.' *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984)."), *cert. denied* 528 U.S. 820, 120 S. Ct. 63, 145 L. Ed. 2d 55 (1999).

To the extent Defendants seek an order dismissing Plaintiffs' state law claims, Defendants' motion for summary judgment is due to be denied. However, Plaintiffs' state law claims are due to be dismissed without prejudice.

### IV.    CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is due to be granted in part and denied in part. The Court finds no disputed issue of material fact and that Defendants are entitled to judgment as a matter of law on Plaintiffs' § 1983 claims for excessive force and substantive due process. Such claims are due

to be dismissed with prejudice.  Plaintiffs' state law claims are due to be dismissed without prejudice.  The Court will enter an order contemporaneously herewith in accordance with this memorandum opinion.

DONE this 10th day of May, 2001.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE